NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x
:
In re:                                          :            Chapter 11
:
Cocoa Services, L.L.C., et al.                  :            Case No. 17-11936-JLG
fdba Cocoa Services, L.P.,                       :
                                Debtor.          :
:
-------------------------------------------------------x
:
Alan Nisselson, as Chapter 7 Trustee            :
for Transmar Commodity Group, Ltd.,             :
                                                 :            Adv. Proc. No. 17-01182-JLG
                                Plaintiff,       :
                                                 :
v.                                               :
                                                 :
Bank of the West,                                :
                                                 :
                                Defendant.       :
                                                 :
-------------------------------------------------------x

**MEMORANDUM DECISION GRANTING**
**DEFENDANT'S MOTION TO DISMISS COMPLAINT**


**A P P E A R A N C E S:**

THOMPSON & KNIGHT LLP
811 Main Street
Suite 2500
Houston, TX 77002
By:    Anthony F. Pirraglia, Esq.

*Counsel for Defendant Bank of the West*

WINDELS MARX LANE & MITTENDORF LLP
156 W. 56th St
New York, NY 10019
By:    James M. Sullivan, Esq.

*Counsel for Plaintiff Alan Nisselson, as Chapter 7 Trustee for Transmar Commodity Group, Ltd.*

**HONORABLE JAMES L. GARRITY, JR.**
**UNITED STATES BANKRUPTCY JUDGE:**

Cocoa Services, L.L.C. ("**Cocoa Services**") and Morgan Drive Associates, L.L.C.

("**Morgan Drive**," with Cocoa Services, the "**Debtors**") are chapter 11 debtors in this Court.

The Bank of the West ("**BOW**") is asserting a pre-petition claim against Cocoa Services in the

sum of at least $5,308,526.09.   BOW maintains (and the Debtors have so stipulated) that the

claim is fully secured by a lien on all of Cocoa Services' assets.   Transmar Commodity Group

LTD ("**Transmar**"), a chapter 7 debtor herein, is among Cocoa Services' largest creditors.   Alan

Nisselson, as the chapter 7 trustee of the of the estate of Transmar (the "**Trustee**"), denies that BOW

perfected its alleged security interests in Cocoa Services' property and has commenced this

adversary proceeding by filing a complaint (the "**Complaint**") essentially to challenge BOW's

claim.[1]   BOW has moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure

12(b)(6), as made applicable herein by Federal Rule of Bankruptcy Procedure 7012, for failure to

state a claim upon which relief can be granted (the "**Motion**").[2]   The Trustee opposes the

Motion.[3]

For the reasons set forth herein, the Motion is **GRANTED**.

---

[1]   *See* Complaint against Bank of the West (A) to Determine Validity, Priority, and Extent of Bank of the West's Liens on Cocoa Services, L.L.C.'s Property, (B) Objecting to Bank of the West's Secured Claim Against Cocoa Services, L.L.C., (C) Surcharging Bank of the West's Secured Claim Against Cocoa Services, L.L.C. for the Expenses Necessary to Preserve the Collateral Securing Such Claim, and (D) Avoiding Bank of the West's Unperfected Liens, and (E) Granting Related Relief [A.P. ECF No. 1].

[2]   In support of the Motion, BOW filed: (i) Notice of Defendant's Motion to Dismiss Plaintiff's Adversary Complaint [A.P. ECF No. 6]; the Declaration of Anthony F. Pirraglia [A.P. ECF No. 7] (the "**Pirraglia Declaration**"); the Memorandum of Law [A.P. ECF No. 8]; Supplemental Declaration of Anthony F. Pirraglia [A.P. ECF No. 13] (the "**Supplemental Pirraglia Declaration**"); and a Reply Memorandum in Further Support of the Motion [A.P. ECF No. 14] (the "**Reply**").

[3]   The Trustee filed a memorandum of law in opposition to the Motion [A.P. ECF No. 12] (the "**Trustee's Opposition**"), and a Declaration of Alan Nisselson in support of his opposition to the Motion [A.P. ECF No. 11] (the "**Nisselson Declaration**").

## Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1) and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

## Facts[4]

## Background

On December 31, 2016, Transmar filed a voluntary petition for reorganization under chapter 11 of the Bankruptcy Code in this Court.  Complt. ¶ 1.  Transmar remained in possession and control of its business and assets as a debtor in possession until July 26, 2017, when the Court granted the Debtor's prepetition lenders' motion and converted Transmar's chapter 11 case to one under chapter 7 of the Bankruptcy Code.  *Id.* ¶¶ 14-17.  The Trustee's appointment was effective on July 26, 2017.  He continues to serve in that capacity.  *Id.* ¶¶ 7, 18.

On July 14, 2017 (the "**Petition Date**"), the Debtors filed separate voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court.  *Id.* ¶ 27.  Both Debtors have remained in possession and control of their businesses and assets as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  *Id.* ¶ 28.  The United States Trustee ("**U.S. Trustee**") has not appointed an unsecured creditors committee (a "**Creditors' Committee**") in these cases.  The Debtors are affiliates and wholly-owned subsidiaries of Transmar.  *Id.* ¶ 7.  As of the Petition Date, Cocoa Services operated a cocoa liquor and cocoa butter melting and deodorizing facility in New Jersey, while Morgan Drive, a real estate holding

---

[4]   The following facts are derived from allegations in the Complaint and documents of record in the case that are referred to in the Complaint.

company, owned the land and building at which Cocoa Services operated.  Historically,

Transmar was one of Cocoa Services' largest customers.  *Id.* ¶ 19.  By order dated October 4,

2017 (the "**Sale Order**"), the Debtors sold substantially all of their assets to Carlyle Cocoa

Company L.L.C.  *Id.* ¶¶ 28, 30. [5]  That sale was "as is," "where is" and free and clear of all liens,

with such liens attaching to the sale proceeds, with the same validity, enforceability, priority,

force and effect as they had prior to the sale.  *Id.*  ¶¶ 28-31.

As of the Petition Date, Cocoa Services was party to a Master Equipment Financing

Agreement dated April 8, 2014 (as amended, restated, supplemented and/or otherwise modified

from time to time) (hereinafter to be referred to as the "**Equipment Financing Agreement**" or

the "**Security Agreement**") with BOW.  *Id.* ¶ 9.  Pursuant to that agreement, among other

things, BOW loaned Cocoa Services funds (the "**Equipment Loans**") to acquire certain

machinery and equipment (the "**Specified Equipment**"), as set forth in the schedules (the

"**Equipment Schedules**") incorporated as part of the Security Agreement.  *Id.*  The Trustee

contends that as security for the Equipment Loans, Cocoa Services purported to grant BOW a

security interest in the Specified Equipment and that BOW purported to perfect that security

interest by filing UCC-1 financing statements.  *Id.* ¶¶ 10, 11.

On August 28, 2017, Cocoa Services filed its Schedules of Assets and Liabilities.  *Id.* ¶

32; s*ee also* Schedules of Assets and Liabilities for Cocoa Services, L.L.C. [ECF No. 86].  In

Schedule D (Creditors Who Have Claims Secured by Property), Cocoa Services (i) scheduled

BOW as a secured creditor with a claim in the amount of $5,308,526.09 (the "**BOW Claim**"),

(ii) described its property that is subject to a lien as "[s]ubstantially all of the Debtor's assets, as

---

[5]    *See* Order (A) Approving the Sale and Assignment of Substantially All of the Debtors' Assets Free and Clear of
All Liens, Claims, Interests, and Encumbrances Pursuant to 11 U.S.C. § 363, (B) Authorizing the Assumption and
Assignment of Certain Executory Contracts Pursuant to 11 U.S.C. § 365, and (C) Granting Related Relief Pursuant
to Bankruptcy Coe § 105 filed on October 4, 2017 [17-11936 ECF No. 117].

described in the underlying loan documents and related UCC filings[,]" and (iii) listed the value of the collateral that supports the BOW Claim as "Unknown." *Id.* BOW has not filed a proof of claim herein. Complt. ¶ 33.

On July 14, 2017, the Debtors filed a motion (the "**Cash Collateral Motion**") seeking authorization to utilize cash collateral,[6] which the Court granted on a final basis by order dated August 15, 2017 (the "**Final Cash Collateral Order**").[7] *See generally* Complt. ¶ 34 (describing miscellaneous provisions of Final Cash Collateral Order). Without limitation, under that order, and pursuant to sections 361 and 363(e) of the Bankruptcy Code, the Court granted BOW replacement liens and superpriority claims as adequate protection of its interests in its "Prepetition Collateral." *See* Final Cash Collateral Order ¶¶ 2 a. & b. For these purposes, the term "Prepetition Collateral" means:

> Cocoa Services' assets, "described in the Schedule, including all of Cocoa Services' equipment, machinery, tools, parts, inventory, fixtures, accounts, documents, general intangibles, contract rights, government payments, chattel paper, rents and income payment intangibles and obligations arising now or hereafter thereunder and all proceeds of any of the foregoing and all products of, additions to, replacements of, and returns and repossession of such collateral and all accessories, accessions, parts and machinery and equipment now or hereafter affixed to such collateral, as further set forth in the Prepetition Financing Documents."

---

[6] *See* Motion for Entry of Interim and Final Orders (A) Authorizing Use of Cash Collateral by Cocoa Services, L.L.C., (B) Granting Adequate Protection, (C) Scheduling a Final Hearing, and (D) Granting Related Relief [17-11936 ECF No. 7].

[7] *See* Final Order Pursuant to 11 U.S.C. §§ 361, 362 and 363 and Rules 4001(B), 4001(D) and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing Use of Cash Collateral by Cocoa Services, L.L.C., (II) Providing Adequate Protection Thereof [17-11936 ECF No. 76]. That order authorized the Debtors to utilize the cash collateral through September 30, 2017. Thereafter, the order was extended through December 30, 2017. *See* Order (I) Extending Cocoa Services, L.L.C.'s Use of Cash Collateral Pursuant to Final Order Pursuant to 11 U.S.C. §§ 361, 362, and 363 and Rules 4001(b), 4001(d) and 9014 of the Federal Rules of Bankruptcy Procedure and (II) Providing Adequate Protection filed on November 9, 2017 [17-11936 ECF No. 138].

Cash Collateral Motion ¶ 9.  The grant of adequate protection was subject to a "Carve-Out" in

favor of: (i) the Clerk of the Court; (ii) the United States Trustee; and (iii) counsel to the Debtors

and Creditors' Committee (if any).[8]   In addition, pursuant to the Final Cash Collateral Order, the

Debtors stipulated (the "**Debtors' Stipulations**"), in substance, and without limitation, to the

following:

> (i)  Cocoa Services and BOW are parties to that certain Equipment Financing
> Agreement, and together with all related loan and security documents (the
> "**Prepetition Loan Documents**").
>
> (ii) The amount outstanding on the Petition Date under the Equipment Financing
> Agreement was approximately $5,308,526.09 (the "**Prepetition Obligations**").
>
> (iii) As set forth in the Prepetition Loan Documents, prior to the Petition Date,
> Cocoa Services granted to BOW security interests in and liens on (collectively,
> the "**Prepetition Liens**") the Prepetition Collateral.
>
> (iv)  The Prepetition Obligations are legal, non-avoidable obligations of Cocoa
> Services, and the Prepetition Liens constitute valid, binding, enforceable, and
> properly-perfected first priority liens encumbering the Prepetition Collateral that
> are not subject to avoidance or subordination pursuant to the Bankruptcy Code or
> applicable non-bankruptcy law.

*Id.*  ¶ C (i) – (iv).[9]  The order is clear that the Debtors' Stipulations are without prejudice to the

rights of interested parties (other than the Debtors or their successors) to:

---

[8]    For these purposes, the term "Carve-Out" means:

> (a) statutory fees and expenses of the United States Trustee and the clerk of the court, (b) up to
> $10,000 for the fees and expenses incurred by a chapter 7 trustee, (c) up to $250,000 for the fees
> and expenses of the debtors' and creditor committee's professionals prior to an Event of Default
> under the Final Cash Collateral Order, and (d) up to $75,000 for the fees and expenses of the
> debtors' and creditor committee's professionals after an Event of Default under the Final Cash
> Collateral Order.

Final Cash Collateral Order ¶ 3 a.

[9]    The stipulation regarding the validity of the Prepetition Liens and Prepetition Obligations provides, as follows:

> The Prepetition Liens constitute valid, binding, enforceable, and properly-perfected first priority
> liens encumbering the Prepetition Collateral that are not subject to avoidance or subordination
> pursuant to the Bankruptcy Code or applicable non-bankruptcy law. The Prepetition Obligations
> (a) constitute legal, valid, binding, and non-avoidable obligations of Cocoa Services, enforceable

5

(i) seek to object to or to challenge the findings herein, the Debtors' Stipulations, or any other stipulations herein, including, but not limited to, those in relation to (A) the validity, extent, priority, characterization or perfection of the security interests and liens of BOW with respect to the Prepetition Collateral, or (B) the validity, allowability, priority, characterization, secured status or amount of the Prepetition Obligations evidenced by the Prepetition Loan Documents; or (ii) otherwise assert any claim or cause of action, including, without limitation, any derivative action, against the BOW. Any party, including the Creditors' Committee (if appointed), that has been granted standing, must commence an adversary proceeding or contested matter, as required by the applicable Bankruptcy Rules, seeking to bring any claim, objection or challenge, including without limitation any claim or cause of action against BOW (each, a "Challenge").

---

in accordance with the terms of the Prepetition Loan Documents; and (b) are not subject to avoidance, subordination, recharacterization, recovery, attack, offset, counterclaim, defense, or Claim (as such term is defined in the Bankruptcy Code) of any kind pursuant to Bankruptcy Code or applicable non-bankruptcy law. Any amounts previously paid to BOW on account thereof or with respect thereto are not subject to avoidance, reduction, disallowance, impairment, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law. Cocoa Services does not have any claims, objections, challenges, causes of actions, and/or choses in action, including, without limitation, avoidance claims under chapter 5 of the Bankruptcy Code, against BOW, or any of its respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to the Prepetition Loan Documents. Cocoa Services expressly, forever and irrevocably waives, discharges, releases and acquits BOW, and its respective former, current and future officers, directors, employees, managers, owners, shareholders, members, partners, agents, representatives, attorneys, advisors, consultants, accountants and other professionals, affiliates, predecessors and successors in interest of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, defenses, offsets, objections, counterclaims, causes of actions, choses of action, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened, including, without limitation, all legal and equitable theories of recovery arising under common law, statute or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to the Prepetition Loan Documents and/or the transactions contemplated hereunder or thereunder, including, without limitation, (1) any so-called "lender liability" or equitable subordination claims or defenses, (2) any and all claims and causes of action under the Bankruptcy Code, and (3) any and all claims and causes of action with respect to the Prepetition Liens or Prepetition Obligations, including, without limitation, to the validity, priority, perfection or avoidability of the liens or claims of BOW; and Cocoa Services expressly, forever and irrevocably waives, discharges, and releases rights it may have to challenge any of the Prepetition Liens or the Prepetition Obligations; provided, however, that nothing herein shall abrogate any applicable disciplinary rules.

Final Cash Collateral Order ¶ C (iv).

*Id.* ¶ 9.  The order also mandated that a party in interest seeking to bring a Challenge do so, no

later than sixty (60) calendar days from the date of entry of the Final Order (the "**Challenge**

**Period**").  *Id.*  Finally, the order is clear that nothing in the order

> vests or confers on any Person (as defined in the Bankruptcy Code), including any
> committee, standing or authority to pursue any cause of action belonging to the
> Debtors or their estates; provided, however, Alan Nisselson, the chapter 7 trustee
> of Transmar Commodity Group, Ltd, the sole shareholder of each of the Debtors,
> shall have standing and the authority to prosecute a Challenge should he deem it
> appropriate to do so.

*Id.*


**The Trustee's Complaint**

On October 16, 2017 – the last day of the Challenge Period – the Trustee commenced this

adversary proceeding by filing the Complaint.  The Trustee does not challenge the validity,

allowability, priority, characterization or amount of the Prepetition Obligations.  Thus, he does

not dispute that BOW is a creditor of Cocoa Services on account of the Equipment Loans BOW

made to Cocoa Services pursuant to the Security Agreement, or that as of the Petition Date, the

BOW Claim totaled $5,308,526.09.  However, in Count One of the Complaint, he purports to

challenge the Prepetition Liens by asserting that "[a] determination by [this Court] of the

validity, priority, and extent of the prepetition security interest claimed by BOW in Cocoa

Services assets is necessary to the proper administration of the estate." Complt. ¶ 46.  As support

for that contention, he says that: (i) BOW failed to perfect its security interest in certain

unidentified equipment owned by Cocoa Services that the Trustee says have become "fixtures"

to the Morgan Drive real property (*id*. ¶ 38), (ii) a "fair reading" of the "Prepetition Loan

Documents" demonstrates that the collateral securing the BOW Claim does not consist of the

Prepetition Collateral, but rather, is limited to the Specified Equipment (*id.* ¶ 39); and (iii) that

the Morgan Drive's liens and/or interests in Cocoa Services' assets may be senior in priority to

those of BOW in such assets.  *Id.* ¶ 43.  In Count Two, the Trustee objects to the BOW Claim "to

the extent that it purports to be a fully secured claim and demands that the secured claim of

BOW be reduced to the value of BOW's interest in the Specified Equipment that is specifically

identified in a duly filed UCC-1 financing statement (to the extent such Specified Equipment

constitutes personal property) and a duly filed "fixture filing" (to the extent such Specified

Equipment constitutes a fixture)."  *See id.* ¶ 53.  In that Count he also objects to the BOW Claim

"to the extent it seeks post-petition interest, fees, costs, or charges to the extent that BOW is not

oversecured."  *Id.* at ¶ 55.  In Count Three the Trustee seeks to surcharge the collateral securing

the BOW Claim to fund certain administrative expenses of the Debtors.  *See id.* ¶¶ 56-58.

Finally, in Count Four, pursuant to section 544 of the Bankruptcy Code, the Trustee seeks to

avoid BOW's liens on equipment owned by Cocoa Services that became fixtures in Morgan

Drive's real property, to the extent they are unperfected or improperly perfected.  *See id.* ¶¶ 59-

62.

## Legal Standard and Scope of the Record Legal Standard

Rule 8(a)(2) mandates that a complaint contain "a short and plain statement of the claim

showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).[10]  Although that rule does

not prescribe technical forms of pleading, it is settled that a complaint must be "sufficiently

particular to give notice of the matter in controversy[.]" *Merrin Jewelry Co. v. St. Paul Fire and

Marine Ins. Co.*, 301 F. Supp. 479, 481 (S.D.N.Y. 1969).  *See also Robbins v. Banner Indus.,

Inc.*, 285 F. Supp. 758, 760 (S.D.N.Y. 1966) (notice pleading requires "averment of a single set

of facts" accompanied by "separate counts" setting forth the pleader's legal theories for

recovery.)

---

[10]   Rule 8 is made applicable herein by Fed. R. Bankr. P. 7008.

> Rule 12(b)(6) states, in relevant part, that:
>
> (b) Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defense[ ] by motion . . . (6) failure to state a claim upon which relief can be granted . . . .

Fed. R. Civ. P. 12(b)(6).  The purpose of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980); *see also Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (stating that the purpose of Rule 12(b)(6) motion "is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits.") (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) (emphasis and quotation marks omitted)); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991), *cert. denied*, 503 U.S. 960, 112 S. Ct. 1561, 118 L. Ed. 2d 208 (1992) ("[A] Rule 12(b)(6) motion challenges the facts alleged on the face of the complaint . . . or, more accurately, the sufficiency of the statements in the complaint . . .") (citations omitted).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007); *see also Koppel v. 4987 Corp.,* 167 F.3d 125, 133 (2d Cir. 1999) ("A plaintiff . . . need only *allege*, not *prove*, sufficient facts to survive a motion to dismiss.").  Courts use a two-prong approach in assessing the merits of Rule 12(b)(6) motions. *See Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (noting that *Iqbal* "creates a 'two-pronged approach' . . . based on '[t]wo working

9

principles.'" (quoting *Iqbal*, 556 U.S. at 678-79, 129 S. Ct. 1949-50).  First, the pleading must

offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of

action' . . .  Although for the purposes of a motion to dismiss we must take all of the factual

allegations in the complaint as true, we are not bound to accept as true a legal conclusion

couched as a factual allegation.' . . .  Second, '[w]hen there are well-pleaded factual allegations,

a court should assume their veracity and then determine whether they plausibly give rise to an

entitlement to relief.'"  *Id*. (quoting *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1950); *see also McCarthy*

*v. Dun & Bradstreet Corp*., 482 F.3d 184, 191 (2d Cir. 2007) ("In reviewing a motion to dismiss

under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, we

accept as true all factual statements alleged in the complaint and draw all reasonable inferences

in favor of the non-moving party.").  However, even as the Court liberally construes the

pleading, "bald assertions and conclusions of law will not suffice."  *Spool v. World Child Int'l*

*Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008).  "The plausibility standard is not akin to a

'probability requirement,' but it [requires the plaintiff to plead] more than a sheer possibility that

a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.  A claim will be dismissed if the

plaintiff does not nudge its claims "across the line from conceivable to plausible."  *Twombly*, 550

U.S. at 570.

        In resolving a Rule 12(b)(6) motion, a court is generally limited to the facts and

allegations that are contained in (1) the complaint, (2) documents either incorporated into the

complaint by reference or attached as exhibits, and (3) matters of which the court may take

judicial notice.  *Gowan v. Amaranth LLC (In re Drier LLP),* 452 B.R. 451, 460 (Bankr. S.D.N.Y.

2011) (citing *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide,*

*Inc.,* 369 F.3d 212, 217 (2d Cir. 2004); *Chambers v. Time Warner, Inc*., 282 F.3d 147, 152-53

(2d Cir. 2002)).  Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] solely relies and which is integral to the complaint' may be considered by the court in ruling on such a motion.'"  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Industries, Inc.,* 949 F.2d at 47) (emphasis omitted).  A document is integral to the complaint where the complaint "relies heavily upon its terms and effect."  *Chambers*, 282 F.3d at 153 (quoting Audiotext *Network, Inc. v. Am. Tel. and Tel. Co*., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)).

In relevant part, Rule 12(d) provides, "[i]f, on a motion under Rule 12(b)(6) . . .  matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  "[A] district court is not obliged to convert a 12(b)(6) motion to one for summary judgment in every case in which a defendant seeks to rely on matters outside the complaint in support of a 12(b)(6) motion; it may, at its discretion, exclude the extraneous material and construe the motion as one under Rule 12(b)(6)."  *United States v. Int'l Longshoremen's Ass'n,* 518 F. Supp. 2d 422, 450 (E.D.N.Y. 2007) (collecting cases).

The Trustee did not attach any documents to the Complaint.  However, in opposing the Motion he submitted three documents (the "**Trustee Lien Challenge Documents**")[11] to support his assertion – first made in his opposition papers – that the UCC-1's filed by BOW failed to perfect BOW's security interests in Cocoa Service's property because they do not comply with sections 9-516(b)(5) and 9-502(b) of the Uniform Commercial Code, as adopted in New Jersey (the "**NJ UCC**").  *See* Opp'n 9-11.[12]  Those documents are outside the record of the Motion

---

[11]    *See* Nisselson Declaration Exs. A-C.

[12]    New Jersey law is applicable herein because Cocoa Services' collateral is located in New Jersey.  *See Doyle v. Northrop Corp.*, 455 F. Supp. 1318, 1328 (D.N.J. 1978) ("[T]he substantive law of the place where the collateral is

because the Trustee does not identify, mention or rely on the documents in support of the Complaint.  Moreover, the documents purport to introduce facts and claims for relief not alleged in the Complaint.  The Court will not consider them in resolving the Motion.  *See Longo v. Ortiz,* 15-CV-7716, 2016 WL 5376212 at *4, n.5 (S.D.N.Y. Sept. 26, 2016) ("In assessing the merits of a Rule 12(b)(6) motion, court refused to consider documents introduced by a plaintiff in opposition to the motion because "the factual allegations they purport to support are not themselves pled in the [p]laintiff's complaint.").

In support of the Motion, BOW, through its counsel, submitted twenty-two documents (the "**BOW Documents**").  It submitted three of them in its reply to the Trustee's opposition to the Motion and specifically to respond to facts contained in the Trustee Lien Challenge Documents (the "**BOW Lien Challenge Documents**").[13]  The Court will exclude those documents from the record of the Motion because they are not identified, mentioned or relied on in the Complaint.  Six of the BOW Documents are filed of record in these jointly administered cases.  Five of them are directly or indirectly referenced in the Complaint and, for that reason, will be included in the record of the Motion.  *See* Fed. R. Civ. P. 10(c); *Cortec Indus., Inc.*, 949 F.2d at 47 ("Relying on Rule 10(c), we have held that the complaint is deemed to include any written instrument attached to it as an exhibit or statements or documents incorporated in it by reference.") (citations omitted); *James v. Correct Care Sols.*, No. 13-CV-0019, 2013 WL 5730176, at *3 (S.D.N.Y. Oct. 21, 2013) ("The materials that may be considered on a motion to

---

located governs "without regard to possible contracts in other jurisdictions.") (internal quotations marks omitted).  Unless otherwise provided herein, all citations to provisions of the New Jersey Uniform Commercial Code as adopted by New Jersey (i.e., the NJ UCC) will be referenced as "N.J. Rev. Stat. § 12A:9-xxx" or "NJ UCC" and all citations to the Model Uniform Commercial Code will be referenced as "Model U.C.C. 9-xxx."

[13]    *See* Supplemental Pirraglia Declaration Exs. 20-22.

dismiss are those 'asserted within the four corners of the complaint, the documents attached to

the complaint as exhibits, and any documents incorporated in the complaint by reference.' . . .

One way a document may be deemed incorporated by reference is where the complaint 'refers

to' the document.") (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir.

2007).[14]  The sixth document is the Schedule of Assets and Liabilities for Morgan Drive

Associates ("**Morgan Drive Schedules**") filed by Morgan Drive in its chapter 11 case.[15]

Although the Trustee does not refer to those schedules (in contrast to the Cocoa Services

schedules), the Court can take judicial notice of them.  *See, e.g.*, *Blue Trees Hotels Inc.*

*(Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.,* 369 F.3d 212, 217 (2d Cir. 2004)

("[W]e may also look to public records . . . in deciding a motion to dismiss."); *In re MSR Hotels*

*& Resorts, Inc.,* No. 13-11512, 2013 WL 5716897, at *1 (Bankr. S.D.N.Y. October 1, 2013) ("A

court is empowered to take judicial notice of public filings, including, in an adversary

proceeding, those filed on its own dockets in the underlying bankruptcy case.") (citation

omitted).

The remaining thirteen BOW Documents (the "**BOW Loan Documents**") consist of

copies of (i) the Security Agreement and amendments thereto;[16] (ii) schedules to the Security

---

[14]    Those documents consist of the:

      Final Cash Collateral Order (Pirraglia Decl. Ex. 14);

      Schedule of Assets and Liabilities for Cocoa Services (Pirraglia Decl. Ex. 15);

      Bidding Procedures Order (Pirraglia Decl. Ex. 16);

      Sale Order (Pirraglia Decl. Ex. 17); and

      Order Extending Use of Cash Collateral (Pirraglia Decl. Ex. 18).

[15]    *See* Schedule of Assets and Liabilities for Morgan Drive Associates (Pirraglia Decl. Ex. 19).

[16]    Those documents are:

Agreement and an amendment thereto;[17] (iii) miscellaneous documents relating to the Security

Agreement, including a Continuing Guarantee, an Automatic Transfer Authorization and Control

Agreement, a Real Property Waiver executed by Morgan Drive in favor of BOW and a Mortgage

Termination Agreement;[18] and (iv) UCC-1 Financing Statements and Fixture Filing.[19]

---

Master Equipment Financing Agreement entered into between Bank of the West, as creditor, and Cocoa Services, L.L.C., as debtor, dated as of April 8, 2014 (defined above as the "Equipment Financing Agreement" or "Security Agreement").  Pirraglia Decl. Ex. 1.

Amendment No. 01 to Master Equipment Financing Agreement between Bank of the West as creditor, and Cocoa Services, L.L.C., as debtor, dated as of April 8, 2014 (the "**First Amendment to the Security Agreement**").  Pirraglia Decl. Ex. 5.

Amendment No. 02 to Master Equipment Financing Agreement between Bank of the West as creditor, and Cocoa Services, L.L.C., as debtor, dated as of April 8, 2014 (together with Pirraglia Decl. Ex. 5, the "**First and Second Amendments to the Security Agreement**").  Pirraglia Decl. Ex. 6.

[17]   Those documents are:

Schedule No. 100-0614393-001 to Master Equipment Financing Agreement between Bank of the West as Creditor, and Cocoa Services, L.L.C., as Debtor, dated as of April 8, 2014 (the "**First Schedule**"), including Schedule A to the First Schedule ("**First Schedule A**").  Pirraglia Decl. Ex. 2.

Schedule No. 100-0614393-003 to Master Equipment Financing Agreement between Bank of the West as Creditor, and Cocoa Services, L.L.C., as Debtor, dated as of April 8, 2014 (the "**Supplemental Schedule**"), including Schedule A to the Supplemental Schedule ("**Supplemental Schedule A**").  Pirraglia Decl. Ex. 3.

Amendment No. 01 to the Supplemental Schedule (Schedule No. 100-0614393-003) to Master Equipment Financing Agreement between Bank of the West as Creditor, and Cocoa Services L.L.C. as Lessee dated as of April 8, 2014.  Pirraglia Decl. Ex. 4.

[18]   Those documents are:

Continuing Guaranty, executed by Peter J. Johnson and Mary Johnson, dated as of April 8, 2014.  Pirraglia Decl. Ex. 7.

The Automatic Transfer Authorization and Control Agreement, dated April 8, 2014.  Pirraglia Decl. Ex. 8.

Real Property Lien Waiver executed in favor of Bank of the West on April 16, 2014, by Morgan Drive Associates, L.L.C. (the "**Real Property Waiver**").  Pirraglia Decl. Ex. 12.

Termination of Mortgage between Citizens Bank of Pennsylvania, as mortgagee, and 400 Eagle Court, LLC, as mortgagor, Document No. 00022018, recorded in the Gloucester County real property records on July 2, 2014.  Pirraglia Decl. Ex. 13.

[19]   hose documents are:

UCC Financing Statement, File No. 26537764, recorded in the State of New Jersey, Department of the Treasury, Division of Revenue and Enterprise Services, Cocoa Services L.L.C., Debtor and Bank of the

The BOW Claim is for amounts due and owing under the Equipment Loan.  Counts One

and Four of the Complaint purport to assail the "validity, priority and extent" of all or parts of

the BOW Claim.  Those counts – and the claim objection in Count Two of the Complaint – draw

into issue, the "terms and effect" of the "Prepetition Loan Documents."  The Trustee defines

those documents as the "'Equipment Financing Agreement' . . . together with all related loan and

security documents."  Complt. ¶ 9.  He cites to a few of them: (i) the Equipment Finance

Agreement (¶ 9); (ii) the UCC-1s filed by BOW (¶¶ 11, 53); (iii) BOW's fixture filing (¶¶ 13,

53); and (iv) the Equipment Schedules (¶¶ 9, 34, 49).  Notwithstanding that the Trustee has made

the "Prepetition Loan Documents" integral to the Complaint, he objects to the Court's

consideration of the BOW Loan Documents in resolving the Motion.  In particular, he focuses on

nine of those documents – i.e., the so-called "Transaction Exhibits."  Opp'n 2.  They include the

"Equipment Finance Agreement" and "related loan and security documents," as follows: (a) the

Equipment Finance Agreement and amendments thereto; (b) the First and Supplemental

Schedules to the Security Agreement, and an amendment to the Supplemental Schedule; and (c)

a Real Property Waiver executed by Morgan Drive.[20]  *Id.*  The Trustee contends that those

---

West, Secured Party, dated April 21, 2014 (the "**First UCC-1 Financing Statement**").  Pirraglia Decl. Ex. 9.

UCC Financing Statement, File No. 51013833, recorded in the State of New Jersey, Department of the Treasury, Division of Revenue and Enterprise Services, Cocoa Services L.L.C., Debtor and Bank of the West, Secured Party, dated November 24, 2014 (the "**Second UCC-1 Financing Statement**," and together with the First UCC-1 Financing Statement, the "**UCC-1 Financing Statements**").  Pirraglia Decl. Ex. 10.

UCC Financing Statement, File No. 61 2014 00002573, recorded in Gloucester County, New Jersey, against Cocoa Services L.L.C., Debtor and Morgan Drive Associates LLC, Debtor, Bank of the West, Secured Party, dated June 9, 2014 (the "**Fixture Filing**").  Pirraglia Decl. Ex. 11.

[20]    The "Transaction Exhibits" consist of:

(i) the Security Agreement;

(ii) the First Schedule to the Security Agreement;

(iii) the Supplemental Schedule to the Security Agreement;

documents are outside the record of the Motion because he did not rely on them in drafting the

Complaint.  Opp'n 2.  Indeed, he says that prior to his review of the Pirraglia Declaration, he was

not aware of the "purported existence" of the First and Second Amendments to the Security

Agreement or the Real Property Waiver.  *See* Nisselson Decl. at ¶ 4.

       It is not clear whether the Trustee is saying that he was in possession of certain of the

BOW Documents when he drafted the Complaint, but did not rely on them in doing so, or that he

was not in possession of any of those documents at that time.  Either way, under the facts of this

Motion, the Court will include those documents in the record of the Motion.  It is settled that a

plaintiff cannot overcome a motion to dismiss its complaint by electing not to attach or reference

documents that are integral to the complaint, but not supportive of the relief sought therein.  *See*

*Highland Capital Mgmt., L.P. v. UBS Securities LLC (In re Lyondell Chemical Co.),* 491 B.R.

41, 50 (Bankr. S.D.N.Y. 2013) (a party "cannot willfully close [his] eyes to documents in [his]

possession that are integral to [the] claims [in his complaint].") (footnote omitted); *see also*

*Cortec Indus., Inc.*, 949 F.2d at 44 ("Plaintiffs' failure to include matters of which as pleaders

they had notice and which apparently most wanted to avoid – may not serve as a means for

forestalling the district court's decision on the motion."); *Meyer Pincus & Assocs. P.C. v.*

*Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991) ("[P]laintiff cannot evade a properly

---

       (iv) the Amendment to the Supplemental Schedule;

       (v) the First Amendment to the Security Agreement;

       (vi) the Second Amendment to the Security Agreement;

       (vii) the Continuing Guaranty;

       (viii) the Automatic Transfer Authorization and Control Agreement; and

       (ix) the Real Property Lien Waiver executed by Morgan Drive

argued motion to dismiss simply because plaintiff has chosen not to attach the [document] to the complaint or to incorporate it by reference."). It is undisputed that during the Challenge Period, BOW offered to assist the Trustee and his counsel in their review of the BOW Claim, and to provide them with documents and information, as needed, to facilitate their review of the claim. The Trustee did not act on that offer, even if only to determine whether he was in possession of all documents relevant to a review of the BOW Claim. During the Challenge Period, the Trustee conducted no formal discovery of any party in interest with respect to matters relating to the BOW Claim. The Trustee put the "Equipment Finance Agreement" and "related loan and security documents" at issue in the Complaint. The Trustee's efforts to ascertain the universe of those documents were not impeded in any way. He cannot be heard to complain of the Court's use of those documents in resolving the Motion.

The Trustee also challenges BOW's use of the Real Property Waiver over his "serious concerns" that (i) the signature of Peter Johnson (Morgan Drive's president) does not look the same as it appears on other Transaction Exhibits, (ii) the document appears to be signed by Peter Johnson in his individual capacity, (iii) the Real Property Waiver is not executed by the co-owner of the property, 400 Eagle Court, LLC, (iv) the Real Property Waiver was not recorded though the form it is executed on provides for recording, (v) the Real Property Waiver lists "Swedesboro" rather than "Logan Township" as Morgan Drive's address, (vi) the Real Property Waiver abbreviates "Morgan Drive Associates, LLC" as "Morgan Drive Assoc. LLC," and "400 Eagle Court, LLC" as "400 Eagle" in Exhibit A to the Real Property Waiver, and (vii) the Real Property Waiver refers to the wrong document number (4919-230 rather than 41435). *See* Opp'n

2 n.1.[21]  The Court finds no merit to those contentions.  First, because the Real Property Waiver

is notarized, it is self-authenticating. New York Civil Practice Law and Rules ("**N.Y. C.P.L.R.**")

§ 4538 states, in relevant part:

> Certification of the acknowledgment or proof of a writing, except a will, in the
> manner prescribed by law for taking and certifying the acknowledgment or proof
> of a conveyance of real property within the state is *prima facie* evidence that it
> was executed by the person who purported to do so.

N.Y. C.P.L.R. § 4538.[22]  Moreover, the document is clear that Peter Johnson executed the Real

Property Waiver on behalf of Morgan Drive and, contrary to the Trustee's assertion, 400 Eagle

Court, LLC was no longer a co-owner of the property when Mr. Johnson executed the Real

Property Waiver.  Further, the Trustee has not demonstrated that the Real Property Waiver must

be recorded to be effective, or that the use of abbreviations or the wrong document number

renders it unenforceable.  Accordingly, the Court finds no merit to the Trustee's objection to the

use of the Transaction Exhibits in resolving this Motion.

---

[21]    The Trustee initially challenged the authenticity of the Transaction Documents not filed of record.  *See* Opp'n 2 n.1.  During the January 25, 2018 hearing on the Motion, the Trustee withdrew that contention – except as to the Real Property Waiver.  *See* Transcript of Hearing at p.37:22-38:1, p.38:13-16.

[22]    Under N.Y. C.P.L.R. § 4538, "[a] certificate of acknowledgment attached to an instrument such as a deed raises a presumption of due execution, which presumption . . . can be rebutted only after being weighed against any evidence adduced to show that the subject instrument was not duly executed."  *Lum v. Antonelli*, 102 A.D. 2d 258, 260-261, 476 N.Y.S.2d 921, *aff'd.* 64 N.Y.2d 1158, 490 N.Y.S.2d 733, 480 N.E.2d 347 [2d Dept. 1985]; *see also Elder v. Elder*, 2 A.D.3d 671, 770 N.Y.S.2d 95 [2d Dept 2003]; *Republic Pension Servs. v. Cononico*, 278 A.D.2d 470, 472, 718 N.Y.S.2d 76 [2d Dept 2000]; *Albin v. First Nationwide Network Mtge. Co.*, 248 A.D.2d 417, 418, 670 N.Y.S.2d 42 [2d Dept 1998].  "A certificate of acknowledgment should not be overthrown upon evidence of a doubtful character, such as the unsupported testimony of interested witnesses, nor upon a bare preponderance of evidence, but only on proof so clear and convincing as to amount to a moral certainty."  *Albany County Sav. Bank v. McCarty*, 149 N.Y. 71, 80, 43 N.E. 427 (1896); *see also Cononico*, 278 A.D.2d at 472.  *Osborne v. Zornberg*, 16 A.D. 3d 643, 644 [2d Dept 2005].  The Trustee's assertion that Peter Johnson's signature "does not look the same as it appears on other Transaction Exhibits[,]" falls well short of satisfying that burden.

## Discussion

The Court will now consider the adequacy of the pleadings underlying the Complaint.

## Count One

In Count One, the Trustee asserts that "an actual controversy has arisen and now exists

between [the Trustee], Debtor and BOW as to the validity, priority, and extent of BOW's

purported prepetition liens on Cocoa Services assets." Complt. ¶ 45.  As such, he maintains that

a "determination by this Court of the validity, priority, and extent of the prepetition security

interests claimed by BOW in Cocoa Service's assets is necessary to the proper administration of

the estate." *Id.* ¶ 46.  To that end, he purports to challenge BOW's interest in the Prepetition

Collateral and in Specified Equipment that allegedly have become fixtures on Morgan Drive's

real property.  As to the former, he says that BOW's lien extends only to a subset of the

Prepetition Collateral – i.e., the Specified Equipment – simply because "[a] fair reading of the

Prepetition Financing Documents reflects that BOW's security interest is limited to the Specified

Equipment." *Id.* ¶ 39.[23]  But those conclusory, unsupported allegations plainly fail to give rise to

grounds to challenge BOW's interests in the Prepetition Collateral.  *See Spool v. World Child

Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (stating that "'bald assertions and

conclusions of law will not suffice.'. . . The pleadings must create the possibility of a right to

relief that is more than speculative.") (quoting *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996))

(internal quotation marks omitted).

---

[23]    Under the NJ UCC, a security interest attaches and becomes enforceable when (i) "value has been given," (ii) "the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party," and (iii) "the debtor has authenticated a security agreement that provides a description of the collateral."  N.J. Rev. Stat. § 12A:9-203(b); *see also* Model U.C.C. 9-203(b).  At issue in Count One, is the "description of the collateral" in the Security Agreement.

Nor has he alleged any grounds for contesting BOW's interest in alleged fixtures.  A

fixture is "a chattel that loses its independent identity when affixed to realty."  *In re Rosen*, 208

B.R. 345, 350 n. 9 (D.N.J. 1997).  In determining whether an item is a fixture courts consider

whether the removal of the item "will . . . cause irreparable or serious physical injury or damage

to the freehold."  *In re Gain Elecs.*, 117 B.R. 805, 811 (Bankr. D.N.J. 1990).  Whether property

is a fixture is "a mixed question of law and fact."  *Official Comm. of Unsecured Creditors v. Am.*

*Tower Corp. (In re Verestar, Inc.)*, 343 B.R. 444, 467 n.9 (Bankr. S.D.N.Y. 2006).  The Trustee

has not adequately alleged that any part of BOW's collateral has become affixed to Morgan

Drive's property.  The Court attaches no weight to the Trustee's conclusory assertion that

"[s]ignificant portions of Cocoa Services' equipment, including significant portions of the

Specified Equipment, have become fixtures."  Complt. ¶ 12.  That is because it is no more than a

legal conclusion that is not entitled to the presumption of truth.  *Ashcroft v. Iqbal*, 556 U.S. 662,

698, 129 S. Ct. 1937 (2009*)* ("While legal conclusions can provide the framework of a

complaint, they must be supported by factual allegations.").  Moreover, in support of the claim,

he says that BOW's "fixture filing" as to "certain equipment owned by Cocoa Services" is

defective because the filing did not correctly identify the record owner of the real property and

gave an incorrect address for the real property.  Complt. ¶ 38.  He also asserts that BOW did not

purport to make any "fixture filing" with respect to "other" equipment owned by Cocoa Services

that became fixtures.  *Id.*  Thus, he says that "the liens and/or interests of Morgan Drive in Cocoa

Services' assets may be senior in priority to the liens or interests of BOW in such assets." *Id.* ¶

43.  However, he does not allege any grounds for finding that Morgan Drive has a claim, let

alone a secured claim, against Cocoa Services.  Further, and in any event, those vague and

conclusory allegations plainly fail to support a claim for relief against BOW.  *See Nielsen v.*

*Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("[W]e are not required to credit conclusory allegations or

legal conclusions couched as factual allegations.") (quoting *Rothstein v. UBS AG*, 708 F.3d 82,

94 (2d Cir. 2013)) (internal quotation marks omitted).  Moreover, under New Jersey law, there

are two ways for a secured creditor to perfect its interest in goods that are or are to become

fixtures.  First, the creditor can make a nonfixture filing in the Article 9 records, as with goods,

in accordance with N.J. Rev. Stat. § 12A:9-501(a)(2).[24]  Alternatively, it can file a "fixture

filing" in the office in which a record of a mortgage on the related real property would be filed.

*Id.* § 12A:9-501(a)(1)(B); s*ee also Sturtz Mach., Inc. v. Dove's Indus., Inc.*, No. 5:13CV404,

2014 WL 1383403 at *4 (N.D. Ohio Apr. 8, 2014) (noting that "[t]he UCC highlights the fact

that there are different ways to perfect a security interest in fixtures, two of which are: by filing a

financing statement that covers the fixtures ([Model U.C.C. 9-501(a)(2)]), and by filing an actual

---

[24]    In relevant part, N.J. Rev. Stat. § 12A:9-501 states that

> (a)   [T]he office in which to file a financing statement to perfect the security interest or agricultural lien is:
>
> > (1)   The office designated for the filing or recording of a mortgage on the related real property, if:
> >
> > * * *
> >
> > > (B) the financing statement is filed as a fixture filing and the collateral is goods that are or are to become fixtures; **or**
> >
> > (2) the Division of Commercial Recording or other office designated by Executive Order, in all other cases, including a case in which the collateral is goods that are or are to become fixtures and the financing statement is not filed as a fixture filing.

N.J Rev. Stat. § 12A:9-501.  The Official Comments to this section reinforce the meaning of the clear language of the statute.  "[T]here are two ways in which a secured party may file a financing statement to perfect a security interest in goods that are or are to become fixtures."  Official Comment 4 to N.J. Rev. Stat. § 12A:9-501.  First "[the creditor] may file in the Article 9 record, as with most other goods.  *See* [N.J. Rev. Stat. § 12A:9-501(a)(2)].  Second, the creditor may file the financing statement as a 'fixture filing' . . . in which a record or a mortgage on the related real property would be filed.  *See* [N.J. Rev. Stat. § 12A:9-501(a)(1)(B)]."  Official Comment 4 to N.J. Rev. Stat. § 12A:9-501.  *See also Yablonsky v. Shields*, No. 09-01726, 2010 WL 3219529 at *4 (Bankr. D.N.J. Aug. 11, 2010) (Under the UCC, as codified in New Jersey, financing statements that are filed in the county mortgage records are only effective if "(A) the collateral is as-extracted collateral or timber to be cut; or (B) the financing statement is filed as a fixture filing and the collateral is goods that are or are to become fixtures."  N.J. Stat. § 12A:9-501(a)(1).  In all other cases, financing statements must be filed with the state Division of Commercial Recording, "including a case in which the collateral is goods that are or are to become fixtures and the financing statement is not filed as a fixture filing.  *Id.* § 12A:9-501(a)(2).").

'fixture filing' ([Model U.C.C. 9-502(a)(1)(B)]), which has particular requirements," and that

"[t]he two filings should not be confused simply because they both cover 'fixtures.'").  BOW

filed both the Fixture Filing and UCC-1 Financing Statements that included "fixtures."  The

Complaint purports to focus on the Fixture Filing.  It does not challenge, in any way, the

adequacy of the UCC-1 Financing Statements.  Thus, even if the Trustee stated grounds for

challenging the adequacy of the Fixture Filing (which he has not), he has nonetheless failed to

allege grounds for subordinating BOW's interest in the fixtures because he has not asserted any

grounds for challenging the adequacy of the UCC-1 Financing Statements.

Finally, in further support for Count One, the Trustee says that "[a]t all relevant times,

Morgan Drive held contractual, statutory and/or common law liens or interests in assets of Cocoa

Services located on Morgan Drive's real property . . . including the Specified Equipment," and

that those liens "would secure claims Morgan Drive has against Cocoa Services, including

claims for prepetition and/or postpetition rent."  Complt. ¶¶ 40-41.  He maintains that "Morgan

Drive did not execute a lien waiver in favor of BOW" and, as such, "[t]he liens and/or interests

of Morgan Drive in Cocoa Service's assets may be senior in priority to the liens and/or interests

of BOW in such assets."  *Id*. ¶¶ 42-43.  He also says that "[t]o the extent any of Cocoa Services'

equipment located at the Morgan Drive Property became a fixture, such equipment may have

become the property of Morgan Drive."  *Id.* ¶ 44.  But those assertions fail to state any basis for

finding that Morgan Drive has any interest in Cocoa Service's assets – let alone an interest that is

superior to BOW's interest in those assets.  *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (holding

that to survive a Rule 12(b)(6) standard, "a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'. . . . . Threadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, (2007)).  What's

more, contrary to the Trustee's assertions, Morgan Drive executed the Real Property Waiver in

favor of BOW.  *See* Real Property Waiver.  As such, the Court is not required to accept, as true,

the Trustee's assertion to the contrary.  *See Barnum v. Millbrook Care Ltd. P'ship*, 850 F. Supp.

1227, 1232-33 (S.D.N.Y. 1994) ("[I]f the allegations of a complaint are contradicted by

documents made a part thereof, the document controls and the court need not accept as true the

allegations of the complaint . . . this rule also applies to the instruments supplied by the

Defendant in support of their Rule 12(b)(6) motion to dismiss.") (citations omitted).  The waiver

states, in part, that

> [Morgan Drive] waives any, and shall acquire no, title to or interest in any of such
> property by virtue of such installation or attachment.  [Morgan Drive] further
> waives any right to seize, or to claim any interest whatsoever in, any of such
> property on account of any claim or right [Morgan Drive] may have against any
> person, including, without limitation, any claim or right [Morgan Drive] may have
> or assert against [Cocoa Services], by levy of distraint or otherwise.

Real Property Waiver ¶ 2.  It extends to BOW's collateral that became fixtures.  *See id.* ¶ 1

("None of such property shall be or become deemed a part of or an accession or addition to or a

fixture on the premises even though such property is installed there on or in some manner

attached thereto.").  Thus, Morgan Drive expressly (i) agreed that the Cocoa Services collateral

would not become fixtures and (ii) waived any "title to or interest in any of such property."  *Id.*

Accordingly, the Trustee cannot assert rights in fixtures (if any) located on Morgan Drive's

premises.  For all of those reasons, the Trustee has failed to state any grounds for relief under

Count One.

In opposing the Motion, the Trustee did not rest on the allegations in the Complaint.

Rather in an effort to rebut BOW's contention that Count One fails to state a claim for relief, he

alleges facts and advances legal theories not mentioned in the Complaint.  Thus, as support for

his conclusory assertion that "[a] fair reading of the Prepetition Financing Documents reflects

that BOW's security interest is limited to the Specified Equipment[,]" the Trustee contends that

the granting clause of the Security Agreement is clear that the security interest will relate only to

specific items of equipment and machinery being acquired by Cocoa Services with the financing

being provided by BOW, and that the schedules reinforce that concept.  Opp'n 4.  He says that

although the separate attachment to each schedule includes a detailed list of equipment being

financed and that will serve as collateral for such financing, "buried" in a lead-in sentence to the

First Schedule A is the following language:

> All of the Debtor's equipment, machinery, tools, parts, inventory, fixtures,
> accounts, documents, and general intangibles, whether now owned or hereafter
> acquired and wherever located, all contract rights, all government payments, all
> chattel paper documents, consisting of any and all now existing or hereafter
> arising rental and lease agreements and all rents, income, accounts, payment
> intangibles, and obligations arising now or hereafter thereunder and all proceeds
> of any of the foregoing and all products of, additions to, replacements of, and
> returns and repossessions of such collateral and all accessories, accessions, parts,
> and machinery and equipment now or hereafter affixed to such collateral.

The "Lead-In" is followed by "Including but not limited to the equipment listed below:" and then

a long list of the specific equipment covered by the schedule.  He contends that the language is

insufficient to expand the description of the collateral in the schedule and to alter the clear terms

of the security agreement, which he says provides that the security agreement only applies to

"each item of machinery, equipment and other property described in a schedule referencing this

Agreement and incorporated herein executed by Creditor and Debtor," meaning that describing

the collateral by general categories or by including categories that are not items, such as general

intangibles, would not suffice.  Opp'n 8.  Moreover, he contends that although the schedules to

the security agreement each provide that the equipment covered by the schedule is located at

"400 Eagle Court, Swedesboro, N.J.," the equipment was actually housed in the Debtor's warehouse at "400 Eagle Court, Logan Township, N.J.," two towns away from Swedesboro.  *Id.* Thus, he contends that BOW's security interest never attached to the equipment given that BOW included an incorrect location for the collateral in the schedules.  *Id.*

Next, to buttress his contentions that Morgan Drive has liens or interests in Cocoa Services' assets and that they are superior to those of BOW, the Trustee asserts that "[u]pon information and belief, [Morgan Drive] has a large claim against [Cocoa Services] for back rent and real estate taxes."  Nisselson Decl. ¶ 6.  From that, he says that as of the filing of the Debtors' bankruptcy cases, Morgan Drive had liens on the personal property of Cocoa Services under N.J. Rev. Stat. § 2A:42-1[25] and/or  § 2A:44-166[26] on account of the unpaid rent and the lien has priority over BOW's liens in that property.  Opp'n 8-9.  He says that (i) pursuant to N.J. Rev. Stat. § 12A:9-317(a), Morgan Drive's lien against Cocoa Services' machinery and other chattels for back rent under N.J. Rev. Stat. § 2A:44-166 "appears" to be superior to BOW's liens against the same collateral whether or not such collateral has become a fixture; and (ii) pursuant to N.J. Rev. Stat. §§ 12A:9-334(c) and (e), Morgan Drive's lien against such collateral clearly has priority to the extent such collateral constitutes fixtures.  *Id.* at 9.  Further, he asserts that Morgan Drive's liens under both N.J. Rev. Stat. §§ 2A:42-1, *et seq.* and § 2A:44-166 "appear" to

---

[25]   N.J. Rev. Stat. §§. 2A:42-1 *et seq.* generally provides for statutory right to payment over execution or judgment creditors, but generally junior to a perfected Article 9 lien, for up to one year's rental arrears.

[26]   N.J. Rev. Stat. § 2A:44-166 states, as follows:
   A rentor shall be entitled to a lien on machinery and other chattels to the extent of the rentee's interest therein for the amount of unpaid rent, from the date the rent is unpaid.

   Such lien hereby created shall have priority and be paramount to any title, lien, interest, mortgage, judgment or other encumbrance created or acquired after machinery or other chattels are placed in the premises.  Such priority shall extend only to the amount of unpaid rent for not more than 6 months.  N.J. Rev. Stat. § 2A:44-166.

have priority over BOW's liens in Cocoa Service's assets as a result of numerous filing defects

under N.J. Rev. Stat. §§ 12A:9-516(b)(5) and 12A:9-502(b).  *Id.*  However, none of the facts and

legal theories that the Trustee introduced in his Opposition can cure the deficiencies in the

Complaint because "[i]t is axiomatic that the Complaint cannot be amended by briefs in

opposition to a motion to dismiss." *Longo v. Ortiz,* 2016 WL 5376212 at *4 (S.D.N.Y. 2016)

(holding that "the Court will not consider factual allegations that Plaintiff raised for the first time

in his opposition brief to Defendants' Motion to Dismiss.").  *See, e.g., Jacobson v. Peat,*

*Marwick, Mitchell & Co*., 445 F. Supp. 518, 526 (S.D.N.Y. 1977) (noting that although "[i]t is

true that counsel for the plaintiff makes the necessary averment in his memorandum of law, [] a

party is not entitled to amend his pleading through statements in his brief."); *Car Carriers, Inc. v.*

*Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir. 1984) (stating that "it is axiomatic that the

complaint may not be amended by the briefs in opposition to a motion to dismiss," and noting

that, although the district court had "relied on the plaintiffs' briefs to embellish the conclusory

allegations of the complaint," it must limit its review "to the well-pleaded allegations of the

complaint"), *cert. denied* 470 U.S. 1054, 105 S. Ct. 1758, 84 L. Ed. 2d 821 (1985).  As such, in

assessing whether Count One of the Complaint states a claim for relief, the Court will not

consider those facts and legal theories because they are outside the scope of the Complaint.

Notwithstanding the foregoing, the Court, in its discretion, will treat the Trustee's

opposition to the Motion to include a request for leave to amend the Complaint to assert the new

claims asserted therein.  Rule 15(a) of the Federal Rules of Civil Procedure states that a court

should "freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a).[27]  Whether

to grant that relief is within the Court's sound discretion.  *See McCarthy v. Dun & Bradstreet*

---

[27]    Rule 15 is made applicable herein by Fed. R. Bankr. P. 7015.

*Corp*., 482 F.3d 184, 200 (2d Cir. 2007) ("[I]t is within the sound discretion of the district court

to grant or deny leave to amend.") (citing *Zahra v. Town of Southold*, 48 F.3d 674, 686 (2d Cir.

1995)).  To that end, courts deny relief under Rule 15(a)(2) where the proposed amendment

would be futile.  *See Stephens v. Trump Org. LLC*, 205 F. Supp. 3d 305, 311 (E.D.N.Y. 2016)

(noting that leave to amend a pleading "is properly denied when the amendment would be

futile."); *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*, 797 F.3d 160,

190 (2d Cir. 2015) (noting that "futility" is "[among] the grounds on which denial of leave to

amend has long been held proper[.]").  An amendment to a pleading is futile "if the proposed

claim could not withstand a motion to dismiss under Rule 12(b)(6)." *Lucente v. Int'l Business

Machines Corp*., 310 F.3d 243, 258 (2d Cir. 2002); *see also Williams v. Citigroup Inc., 659 F.3d

208, 214 (2d Cir. 2011) (per curiam) (amendment to a complaint is "futile" where "the proposed

amendments would not remedy the deficiencies in [plaintiff's] claims.").  In that light, the Court

reviews the Trustee's newly asserted claims.  First, in contending that BOW's security interest

does not attach to the equipment actually housed at "400 Eagle Court, Logan Township, New

Jersey," because the agreement mistakenly provides that the equipment listed in the schedule is

located at "400 Eagle Court, Swedesboro, N.J.," the Trustee overlooks the fact that under the

agreement, BOW's collateral is not limited to assets housed in a particular location.[28]  Instead,

First Schedule A to the Security Agreement provides that BOW's security interest covers "[a]ll

of [Cocoa Services'] equipment, whether now owned or hereafter acquired and wherever

located...."  First Schedule A.  Thus, even if the factual allegation is true, and the agreement

mistakenly identifies the location of the equipment, the Trustee nonetheless has failed to state

---

[28]    The relevant documents actually provide that the equipment is housed at "400 Eagle Court, Swedesboro, New
Jersey 08085" and "400 Eagle Court, Swedesboro, Logan Township, New Jersey 08085-1758."  *Cf.* Security
Agreement at 1, and First Schedule A at 5, respectively.

grounds to limit BOW's interest in the collateral located at the Debtor's principal place of

business. [29]  However, an additional problem with the position that the Trustee is advocating is

that both Cocoa Services, and the Trustee have identified Cocoa Services' place of business as

"400 Eagle Court, Swedesboro, N.J," as set forth in the Security Agreement.  *See* Cocoa Services

Chapter 11 petition [ECF No. 1]; Trustee's Limited Objection to Use of Cash Collateral n.1

(stating that the "[t]he Debtors' principal office is located at 400 Eagle Ct., Swedesboro, NJ

08085.") [ECF No. 53].  Thus, those new allegations fail to state a claim for relief.  The Court

will take judicial notice of those documents, which are admissible to rebut the Trustee's

assertions regarding the location of Cocoa Services' principal place of business.

Next, the Court considers the Trustee's new contentions in support of his "fair reading"

of the Security Agreement.  Under N.J. Rev. Stat. § 12A:9-201(a), except as otherwise provided

in the Uniform Commercial Code, a security agreement is effective according to its terms

between the parties, against purchasers of the collateral, and against creditors.  General principles

of contract law apply to the interpretation of a security agreement.  *See, e.g.*, *Evergreen Bank v.

St. Onge (In re St. Onge)*, No. 94-CV-1441, 1996 WL 77389, at *4 (N.D.N.Y. Feb. 21, 1996);

*County of Morris v. Fauver*, 153 N.J. 80, 103, 707 A.2d 958, 969 (1998) (holding that "where

the terms of a contract are clear . . . the court must enforce it as written.").  Where a contract is

ambiguous, "terms are generally construed against the drafter of the contract."  *Malick v.

Seaview Lincoln Mercury*, 940 A.2d 1221, 1223-24 (App. Div. 2008); *see also Bostwick-

Westbury Corp. v. Commercial Trading Co.*, 404 N.Y.S.2d 968, 971 (N.Y. Civ. Ct. 1978) ("Any

---

[29]    In this light, the Trustee misplaces his reliance on *In re California Pump & Mfg. Co. Inc.*, 588 F.2d 717 (9th
Cir. 1978).  There, the court held that a creditor's security interest was specifically limited to collateral located at
436 Rozzi Place, south San Francisco, California 94080," and rejected the creditor's assertion that its lien extended
to collateral located in two other cities.  That was because the security agreement and financing statement at issue
described only categories of collateral "located at 436 Rozzi Place, south San Francisco, California 94080."  Here, in
contrast, under the Security Agreement, BOW's lien extended to equipment "wherever located."  *Id.*  Thus,
*California Pump* is clearly distinguishable from this case.

doubts or ambiguities as to the meaning of any contract terms must be resolved in favor of the

debtor as against the secured party who drafted the instrument."). The sufficiency of a collateral

description in a security agreement is governed by N.J. Rev. Stat. § 12A:9-108, that provides that

"a description of personal or real property is sufficient, whether or not it is specific, if it

reasonably identifies what is described." N.J. Stat. § 12A:9-108(a). "Examples of reasonable

identification [include, among others, a] specific listing [or] category." N.J. Stat. § 12A:9-

108(b)(1)-(2). The requirement that the security agreement reasonably describe the collateral

serves an evidentiary purpose, and "embodies the intention[] of the parties." *Commercial*

*Trading Co. v. Bassin (In re Laminated Veneers Co., Inc.)*, 471 F.2d 1124, 1125 (2d Cir. 1973);

*Royal Bank and Trust Co. v. Pereira (In re Lady Madonna Indus.), Inc.*, 99 B.R. 536, 539

(S.D.N.Y. 1989) (noting that "[t]he signed writing requirement is in the nature of a statute of

frauds and serves the evidentiary function of minimizing 'disputes as to precisely which items of

property are covered by a secured interest.'"). Language that defines collateral using categorical

designations i.e. equipment, "in a security agreement [may be construed by a court] to include

goods not specifically named." *In re St. Onge*, 1996 WL 77389, at *4 (citing *Godeau v. Arzt (In*

*re Sarex Corp.)*, 509 F.2d 689, 690 (2d Cir. 1975)); *but see In re Laminated Veneers*, 471 F.2d at

1125 (categorical grant of a security interest in "equipment" of a lumber company was not

sufficient to grant a security interest in two cars where the security agreement specifically listed

a truck as collateral equipment.). It is well settled that descriptions of collateral are frequently

contained in a schedule or document attached or referred to in a security agreement. *See, e.g.*,

*People's United Equip. Fin. Corp. v. Gotham Logistics, Inc.*, No. 12-5811, 2016 WL 304887 at

*1 (E.D.N.Y. Jan. 25, 2016) (stating that the security agreement "was secured by a

simultaneously executed security agreement providing [the creditor] with a security interest in

29

vehicles set forth in Schedule A to the security agreement, as well as a blanket security interest in essentially all of [the debtor's] property, inventory and accounts"); *In re Leymore Indus., Inc.*, 2 B.R. 229, 230 (Bankr. S.D.N.Y. 1980) (noting that the security agreement referred to collateral described in a schedule); *In re Dwek,* No. 08-1201, 2012 WL 6011625, at *1 (Bankr. D.N.J. Dec. 3, 2012), *aff'd*, No. 07-11757, 2013 WL 6199259 (D.N.J. Nov. 27, 2013) (noting that security agreement can refer to a schedule to define collateral).

Here, the Security Agreement directs a reader to "a schedule referencing this Agreement and incorporated herein" for a description of "each item of machinery, equipment and other property (individually with all accessions, additions and replacements an 'Item' and collectively the 'Equipment'" covered by the Agreement.  Security Agreement ¶ 1.  The First Schedule to the Agreement, describes the "Equipment" subject to the Agreement by reference to "Schedule A Attached Hereto And Made A Part Hereof[,] [t]ogether with all replacements, parts, repairs, additions, accessions and all accessories incorporated therein or affixed or attached thereto and any and all proceeds of the foregoing, including, without limitation, insurance recoveries."  First Schedule at ¶ 1.  In turn, First Schedule A says that it is "[i]ncorporated in the [First Schedule] and describes the collateral as:

> All [of Cocoa Services'] equipment, machinery, tools, parts, inventory, fixtures, accounts, documents, and general intangibles, whether now owned or hereafter acquired and wherever located, all contract rights, all government payments, all chattel paper documents, consisting or any and all now existing or hereafter arising rental and lease agreements and all rents, income, accounts, payment intangibles, and obligations arising now or hereafter thereunder and all proceeds of any of the foregoing and all products of, additions to, replacements of, and returns and repossessions of such collateral and all accessories, accessions, parts, machinery and equipment now or hereafter affixed to such collateral.
>
> Including but not limited to the equipment listed [therein].

*Id*.  The Supplemental Schedule contains substantially identical language to that of the First

Schedule.  Supplemental Schedule A states, in part, that it "is incorporated into the [First

Schedule]."  Neither the terms of the amendments to the Security Agreement, nor those of the

remaining BOW Loan Documents, alter the definition of "Equipment" under the Security

Agreement.  In this light, the Trustee has not stated grounds for limiting the scope of the Security

Agreement to the Specified Equipment.  First, the Collateral Description is not "buried" in a lead

in sentence in the schedule.  Rather, the reader is directed to the description in the First

Schedule.[30]   Moreover, the plain language of the agreement describes "Equipment" as including

"other property."  *See* Security Agreement ¶ 1 (the term "Equipment" defined as "each item of

machinery, equipment and other property . . . described in a schedule referencing this Agreement

and incorporated herein.").   To that end, nothing limits the effectiveness of the categorical

collateral description in the First Schedule A to specifically identified goods in the table

following.  *Cf*. N.J. Rev. Stat. § 12A:9-108(a).  Still, the Trustee argues that there "are numerous

examples of cases where a court has refused to give effect to general categories when such

general language was followed by a specific list."  Opp'n 7.  In support of this argument, he

relies mainly on *In re Laminated Veneers Co., Inc.*, 471 F.2d at 1125.  There, the creditor had

made a secured loan to the debtor, and executed a security agreement that included both a

schedule listing only a truck, and an "omnibus clause" giving the lender a "secured interest in

accounts receivable, inventory, fixtures, machinery, equipment, and tools of the bankrupt."  *Id*.

In addition to the truck, the debtor also owned two Oldsmobile cars that the lender argued were

considered "equipment" under the omnibus clause.  At issue was whether the omnibus clause

---

[30]   BOW correctly notes that the documents are not voluminous.  The Security Agreement is eight (8) pages. The First Schedule is two (2) pages, which incorporates Schedule A to the First Schedule, which is another five (5) pages.  The Supplemental Schedule is two (2) pages, which incorporates Schedule A to the Supplemental Schedule, which is another one (1) page.

was sufficient to grant a security interest in the two Oldsmobiles not listed on the schedule as

collateral.  *Id*.  The Court found that it was not.  In doing so, the court found that the word

"equipment" did not constitute a "description" of the Oldsmobiles," and that, upon examination

of the security agreement, a potential creditor "would conclude that the truck as the only vehicle

mentioned was the only one intended to be covered."  *Id*.  However, the facts of this case are

distinguishable from *Laminated Veneers.*  The "Lead-In" collateral description in First Schedule

A is akin to the "omnibus clause" in *Laminated Veneers*, but the equipment table that follows is

preceded by an enlargement clause – "Including but not limited to the equipment listed below."

In contrast to *Laminated Veneers*, that enlargement clause clarifies precisely that the collateral

description is not limited to the equipment listed in the schedule.  Rather, this case is more like *In

re Sarex Corp.*, 509 F.2d at 690 (2d Cir. 1975).  There, the security agreement provided the

lender with an interest in "Machinery, equipment and fixtures; Molds, tools, dies, component

parts including specifically[]:" four specific molds.  *Id*.  In challenging the extent of the collateral

interest, the trustee argued that only the enumerated molds were covered, and the lender

contended that such a reading gives no effect to the words "[m]achinery, equipment and

fixtures;" and instead rewrites the agreement to give no effect to these categorical descriptions of

collateral.  *Id*. at 691.  The court reasoned that "[b]y referring to the molds specifically we hold

that he did not render meaningless the previous reference to 'machinery, equipment and fixtures;

. . . .'  The ultimate question is whether the description 'reasonably identifies' what is described."

*Id*.  The court ultimately held that, pursuant to U.C.C. § 9-110, the collateral description

"reasonably identified" collateral including machinery, equipment, and fixtures.  In so doing, it

found that "*Laminated Veneers* does not stand for the proposition that the use of generic terms in

a security agreement description will be given no effect."  *Id*.  Here, as in *Sarex,* the categorical

description of collateral in the First Schedule A is followed by an enlargement clause –

"Including but not limited to the equipment listed below."  However, that language is clearer

than the language used in *Sarex* (i.e. "including specifically").  The *Sarex* Court's reasoning is

applicable to the interpretation of the collateral description here.

The Trustee also cites to *Citizens Bank & Trust v. Gibson Lumber Co.*, 96 B.R. 751

(W.D. Ky. 1989) as an example of a case in which a court found ambiguity when reading an

omnibus clause and a specific listing of collateral.  Opp'n 7-8.  In *Citizens,* the listed collateral

was preceded by a term of enlargement as it was in *Sarex*, and as the "Specified Equipment" is in

the First Schedule A.  In *Citizens*, the omnibus clause provided that "[a]ll inventory of lumber

and logs, accounts receivable, all saw mill equipment and all rolling stock, including, but not

limited to. . . ." and went on to list twenty-one separate items.  *Id*. at 752.  The issue before the

court was whether the omnibus clause provided a description of the collateral sufficient to

include specific collateral not listed on a schedule of specific collateral which is part of the same

security agreement.  Ultimately, the *Citizens* court found that the collateral description was

ambiguous, and open to multiple interpretations, and that as the security agreement embodied the

parties' intent, it was necessary to remand the issue for an evidentiary hearing.  *Id.* at 754.  The

collateral description at issue in *Citizens* is not at all similar to the First Schedule A, which

provides for a blanket lien on Cocoa Services' property "now owned or hereafter acquired and

wherever located," and including but not limited to the "Specified Equipment."  "Ambiguity in a

contract is the inadequacy of the wording to classify or characterize something that has potential

significance."  *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d

168, 178 (2d Cir. 2004).  "Whether or not a writing is ambiguous is a question of law to be

resolved by the courts."  *W.W.W. Assocs., Inc. v. Giancontieri,* 77 N.Y.2d 157, 162, 265

N.Y.S.2d 440, 566 N.E.2d 639 (1990); *see also Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London*, 136 F.3d 82, 86 (2d Cir. 1998) ("Under New York law 'the initial interpretation of a contract is a matter of law for the court to decide.' Included in this initial interpretation is the threshold question of whether the terms of the contract are ambiguous.") (quoting *K. Bell & Assoc., Inc. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d Cir. 1996)) (internal citation omitted). Generally, it is inappropriate to dismiss a claim pursuant to Rule 12(b)(6) that is predicated on an ambiguous contract term. *See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 178 (2d Cir. 2004) ("Unless for some reason an ambiguity must be construed against the plaintiff, a claim predicated on a materially ambiguous contract term is not dismissible on the pleadings."). That is because "[t]he meaning of a contract term that is susceptible to at least two reasonable interpretations is generally an issue of fact, requiring the trier of fact to determine the parties' intent." *U.S. Naval Inst. v. Charter Commc'ns,* 875 F.2d 1044, 1048 (2d Cir. 1989). The Court finds that the after-acquired property clause in the Security Agreement is not ambiguous. It clearly provides that BOW's collateral is not limited to the Equipment listed in the schedule. The Trustee's "fair reading" of the Security Agreement fails to give rise to a claim for relief against BOW.

The Court now considers the Trustee's new contentions relating to BOW's interests in the alleged fixtures.[31] The allegations do not state a claim for relief against BOW. First, the Trustee has not pled facts in support of his contention that Morgan Drive has a claim against Cocoa Services for unpaid rent and publicly filed documents (that the Court can consider in assessing whether these contentions state a claim for relief) suggest otherwise. For example, the

---

[31] In doing so, the Court will assume, solely for purposes of this discussion, that the Real Property Waiver is ineffective or otherwise unenforceable.

Morgan Drive Schedules show that as of the Petition Date, Morgan Drive was indebted to Cocoa

Services in the sum of $1,835,840.31.  *See* Morgan Drive Schedules.  In any event, where, as

here, the Trustee could have could have easily ascertained whether Morgan Drive actually holds

a claim against Cocoa Services for unpaid rent, he cannot plead that fact "upon information and

belief."  *See Teixeria v. St. Jude Med. S.C., Inc.*, 193 F. Supp. 3d 218, 226 (W.D.N.Y. 2016)

(finding plaintiff did not meet pleading standard in alleging "upon information and belief" where

plaintiff either knew or could have obtained information by asking another party); *see also Arista*

*Records, LLC v. Doe 3,* 604 F.3d 110, 120 (2d Cir. 2010) (plausibility standard "does not prevent

a plaintiff from pleading facts alleged upon information and belief' where the facts are peculiarly

within the possession and control of the defendant.") (citation omitted).[32]  Moreover, even

assuming, *arguendo*, that Morgan Drive has a claim against Cocoa Services for unpaid rent, and

that the lien arising under N.J. Rev. Stat § 2A:44-166 primes BOW's interest in the fixtures (if

any), that lien would be avoidable in this bankruptcy case.  Sections 545(3) and (4) of the

Bankruptcy Code provide that a trustee or debtor in possession can "avoid the fixing of a

statutory lien on property of the debtor to the extent that such lien . . . (3) is for rent; or (4) is a

lien of distress rent."  11 U.S.C. § 543(3), (4).  *See In re Great Northern Forest Prods., Inc.,* 135

B.R. 46, 56 (Bankr. W.D. Mich. 1991) (applying New Jersey law and holding that even if debtor

owed unpaid rent and landlord held valid landlord's lien under N.J. Rev. Stat § 2A:44-166,

"[a]ny such landlord's lien is avoidable and would be avoided per § 543(3) and (4).  Under such

circumstances [the landlord] would be relegated to the holder of a general unsecured claim.").

---

[32]    The Transmar Trustee complains that he did not receive a copy of a lease. However, that did not preclude him
from inquiring of Morgan Drive whether it held a claim against Cocoa Services for unpaid rent as would be
expected – especially in light of the fact that the Morgan Drive Schedules show that Morgan Drive is indebted to
Cocoa Services.

Finally, the landlord's so-called lien under N.J. Rev. Stat § 2A:42-1 is not "it is not actually a lien at all, but rather a statutory right to preference in payment over other creditors." *Hartwell v. Hartwell Co., Inc*., 167 N.J. Super. 91, 97, 400 A.2d 529 (Superior Ct. N.J. 1979).  It is settled that a landlord's lien based upon N.J. Rev. Stat § 2A:42-1 is subordinate to a security interest perfected according to the Uniform Commercial Code.  *Id*.

The Trustee next contends that pursuant to N.J. Rev. Stat. § 12A:9-388,[33] Morgan Drive's liens under N.J. Rev. Stat. §§ 2A:42-1, *et seq*. and § 2A:44-166 appear to have priority over BOW's liens in Cocoa Services assets because the UCC-1 Financing Statements run afoul of N.J. Rev. Stat. § 12A:9-516(b)(5),[34] and the Fixture Filing violates N.J. Rev. Stat. § 12A:9-502(b). Opp'n 10-12.  As to the former, the Trustee asserts that the UCC-1 Financing Statements contain the wrong mailing address for Cocoa Services.  He contends that the correct address is: "400 Eagle Court, Logan Township, NJ 08085," but that the address in each of the financing

---

[33]    N.J. Rev. Stat. § 12A:9-338 provides that

> If a security interest . . . is perfected by a filed financing statement providing information described in 12A:9-516(b)(5) which is incorrect at the time the financing statement is filed . . . the security interest . . . is subordinate to a conflicting perfected security interest in the collateral to the extent that the holder of the conflicting security interest gives value in reasonable reliance upon the incorrect information.

N.J. Rev. Stat. § 12A:9-338(1).

[34]    N.J. Rev. Stat. § 12A:9-516(b)(5) permits the filing office to reject a financing statement that contains an error of the kind listed in this section, including

> in the case of an initial financing statement or an amendment that provides a name of a debtor which was not previously provided in the financing statement to which the amendment relates, the record does not:
>
> (A) provide a mailing address for the debtor; or
>
> (B) indicate whether the name provided as the name of the debtor is the name of an individual or an organization;

N.J. Rev. Stat. § 12A:9-516(b)(5).

statements is shown as: "400 Eagle Court, Swedesboro, NJ 08085." However, the Court attaches

no weight to those assertions because the Trustee has alleged no facts to support his contention

that Cocoa Services' address is not "400 Eagle Court, Swedesboro, NJ 08085," and, as

previously noted, the documents of record show that it is the correct address. Turning to the

Fixture Filings, N.J. Rev. Stat. § 12A:9-502(b) provides, as follows:

> Real-property-related financing statements. Except as otherwise provided in
> 12A:9-501(b), to be sufficient, a financing statement . . . which is filed as a fixture
> filing and covers goods that are or are to become fixtures, must satisfy [N.J. Rev.
> Stat. § 9-502(a)] and also:
>
> > (1) indicate that it covers this type of collateral;
> > (2) indicate that it is to be filed in the real property records;
> > (3) provide a description of the real property to which the collateral is
> > related; and
> > (4) if the debtor does not have an interest of record in the real property,
> > provide the name of a record owner.

N.J. Rev. Stat. § 12A:9-502(b). The Trustee contends that the Fixture Filing fails to satisfy those

provisions because: (i) it incorrectly identifies the real property to which the collateral covered

by the Fixture Filing relates (the "**Morgan Drive Property**"); (ii) the name and address of the

record owner of the  Morgan Drive Property is not listed in the box that is designated on the form

for that purpose; (iii) the Fixture Filing lists the record owners of the Morgan Drive Property as

"Morgan Drive Assoc. LLC & 400 Eagle"; (iv) the Fixture Filing lists the address of the Morgan

Drive Property as 400 Eagle Court, Swedesboro, NJ 08085; and (v) the Fixture Filing incorrectly

"identifies the deed's document number as '4919-230' [when the] correct document number is

actually 41435." Opp'n 11-12.

A financing statement "substantially satisfying the requirements of [the NJ UCC] is

effective, even if it has minor errors or omissions, unless the minor errors or omissions make the

financing statement seriously misleading." N.J. Rev. Stat. § 12A:9-502(a). To establish that the

Fixture Filing is "seriously misleading," the Trustee must show that it is not discoverable in the real estate records of Gloucester County—the county in which the Morgan Drive Property is located "under the debtor's correct name,[35] using the filing office's standard search logic, if any." N.J. Rev. Stat. § 12A:9-506(b).[36] The Trustee submitted the Trustee Lien Challenge Documents in support of his assertion that the defects in the Fixture Filing make it "seriously misleading" and thus, ineffective to perfect BOW's interest in fixtures. BOW submitted the BOW Lien Challenge Documents to rebut those contentions. All of those documents are outside the scope of the record of the Motion. However, in resolving the Motion, the Court need not determine whether the Trustee has stated a claim for relief under § 12A:9-502(b). That is because assuming, *arguendo*, that BOW's Fixture Filing is defective, it does not follow that its interest in fixtures is subordinate to Morgan Drive's alleged interest in those assets. As noted previously, under the NJ UCC a creditor can perfect its interest in fixtures by filing a UCC-1 financing statement that includes "fixtures." BOW's UCC-1 Financing Statements extend to fixtures, and the Trustee has not alleged grounds to challenge those financing statements.

---

[35]   N.J. Rev. Stat. § 12A:9-503(a) provides that the correct name of a debtor that is a "registered organization" is "the name that is stated to be the registered organization's name on the public organic record most recently filed with or issued or enacted by the registered organization's jurisdiction of organization which purports to state, amend, or restate the registered organization's name[.]"

[36]   N.J. Rev. Stat. § 12A:9-506 provides that

> (b) Financing statement seriously misleading. Except as otherwise provided in subsection (c), a financing statement that fails sufficiently to provide the name of the debtor in accordance with 12A:9-503 (a) is seriously misleading.

> (c) Financing statement not seriously misleading. If a search of the records of the filing office under the debtor's correct name, using the filing office's standard search logic, if any, would disclose a financing statement that fails sufficiently to provide the name of the debtor in accordance with 12A:9-503 (a), the name provided does not make the financing statement seriously misleading.

N.J. Rev. Stat. § 12A:9-506.

For all of the reasons set forth herein, the Court finds that Count One, as pled and as supplemented by the Trustee's Opposition to the Motion, fails to state a claim against BOW upon which relief can be granted.  Accordingly, Count One is dismissed.

## Count Two

The Trustee asserts, and BOW does not dispute, that the Final Cash Collateral Order provided, among other things, that "nothing therein shall prejudice the rights of any party with requisite standing to seek to object to or challenge the findings contained in the Final Cash Collateral Order or any of the Debtors' stipulations contained therein[,]" and granted him "standing and [] authority to prosecute an objection to BOW's claim."  Complt. ¶¶ 50-51.  Count Two of the Complaint consists of the Trustee's objection to the BOW Claim.  The essence of Count Two is that the BOW Claim is undersecured and, as such, the Trustee is entitled to a judgment (i) reducing BOW's secured claim to an amount equal to the value of its collateral, and (ii) denying BOW post-petition interest, fees costs or charges on account of its claim.[37]  *Id.* ¶¶ 53, 55.

BOW did not file a proof of claim.  *Id.* ¶¶ 33, 52.  In opposing the Motion, the Trustee contends that Count Two puts matters relating to the extent of BOW's claim in issue, and that BOW bears the burden of proof as to the validity, priority, and extent of its claim.  Opp'n 3.  The Court disagrees.  First, "[a] proof of claim or interest is deemed filed under section 501 of this

---

[37]    Section 506(b) of the Bankruptcy Code states that

> [t]o the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C. § 506(b).

title for any claim or interest that appears in the schedules filed under section 521(a)(1) or

1106(a)(2) of this title, except a claim or interest that is scheduled as disputed, contingent, or

unliquidated." 11 U.S.C. 1111(a).  *See also* Bankruptcy Rule 3003(b)(1) ("The schedule of

liabilities filed pursuant to § 521(l) of the Code shall constitute prima facie evidence of the

validity and amount of the claims of creditors, unless they are scheduled as disputed, contingent,

or unliquidated.  It shall not be necessary for a creditor . . . to file a proof of claim . . . .").  It is

undisputed that Cocoa Services listed BOW as having an undisputed, non-contingent, and

liquidated claim secured by the Collateral in the amount of $5,308,526.09.  *See* Cocoa Services

Schedules, Schedule D.  Accordingly, pursuant to Rule 3003(b)(1), BOW's "deemed filed" claim

"is accorded the same evidentiary effect as is one actually filed by the creditor." *In re ATD*

*Corp.*, 278 B.R. 758, 762-63 (Bankr. N.D. Ohio 2002) (quoting 9 *Collier on Bankruptcy* ¶

3003.02 at 3003-3—3003-4 (15th ed. rev. 2001)), *aff'd*, 352 F.3d 1062 (6th Cir. 2003).  *See also*

*In re Cluff*, 313 B.R. 323, 340 (Bankr. D. Utah 2004), *aff'd sub nom. Cluff v. eCast Settlement*,

No. 2:04-CV-978, 2006 WL 2820005 (D. Utah Sept. 29, 2006) (stating that a "formal objection

alone is not sufficient" to negate a proof of claim).  That means that the fact that BOW's claim

was not scheduled as "disputed, contingent or unliquidated," is *prima facie* evidence of the

validity of the claim.  *See Clemens v. West Milton State Bank, (In re Clemens)*, 261 B.R. 602,

606 (Bankr. M.D. Pa. 2001) ("The fact that the claim of the Bank was listed on the Debtor's

schedules without being designated as either disputed, contingent, or unliquidated is prima facie

evidence of the validity and the amount of the claim."); *see also In re Wilkins,* 564 B.R. 419, 424

(Bankr. E.D. Cal. 2017) (stating that a scheduled secured claim "affirms that [the] claim is

secured" by its collateral); *In re Med. Software Solutions*, 286 B.R. 431, 442 (Bankr. D. Utah

2002) (finding that a creditor's scheduled, non-contingent, liquidated and non-disputed secured claim established its "valid security interest" in the collateral).

In analyzing an objection to a filed claim, courts within this Circuit employ a burden-shifting methodology in which a proof of claim is *prima facie* evidence of the validity and amount of a claim, and the objector bears the initial burden of persuasion. *See In re Oneida Ltd.,* 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009). If the objecting party "produces 'evidence equal in force to the *prima facie* case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency,'" the burden then shifts to the claimant. *Id.* (quoting *In re Allegheny Int'l, Inc.,* 954 F.2d 167, 173-74 (3d Cir. 1992)). At that point, the claimant must prove by a preponderance of the evidence that under applicable law the claim should be allowed. *Id.*; *accord Kodsy v. Motors Liquidation Co. et al. (In re Motors Liquidation Co.),* No. 11 Civ. 4180, 2012 WL 124581 at *3 (S.D.N.Y. Jan. 17, 2012); *see also In re Adelphia Commc'ns Corp.,* No 02-41729, 2007 WL 601452, at *5 (Bankr. S.D.N.Y. Feb. 20, 2007) ("[C]laimant is [then] required to meet the usual burden of proof to establish the validity of the claim.") (quoting *In re Rockefeller Ctr. Properties*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000)). If the objecting party fails to meet its burden, then the burden of proof does not "shift" back to the claimant to "prove by a preponderance of the evidence that the claim should be allowed as filed," and the claim, as filed, or in this case, as scheduled, is allowed. *In re Motors Liquidation Co.*, 2012 WL 124581, at *3 (citing *In re Adelphia Commc'ns Corp.*, 2007 WL 601452, at * 5).

The Court will apply that methodology here. The Debtors do not allege facts or law in support of the claim objection. Rather, as previously noted, Count Two is directly related to Count One because the Trustee is objecting to the BOW Claim (i) "to the extent that it purports

to be a fully secured claim and demands that the secured claim of BOW be reduced to the value

of BOW's interest in the Specified Equipment that is specifically identified in a duly filed UCC-

1 financing statement (to the extent such Specified Equipment constitutes personal property) and

a duly filed "fixture filing" (to the extent such Specified Equipment constitutes a fixture)[,]" and

(ii) "to the extent that it seeks post-petition interest, fees, costs or charges to the extent BOW is

not oversecured." *Id*. ¶¶ 53, 55.  The Trustee has failed to state a claim for relief in Count One.

Accordingly, he has failed to meet his burden of rebutting the *prima facie* validity of the BOW

Claim and, as such, has failed to state a claim for relief in Count Two.  For those reasons, Count

Two is dismissed.[38]

## Count Three

In the Final Cash Collateral Order, the Debtor and BOW agreed that (i) a Carve-Out

would be established from BOW's collateral to fund certain administrative expenses of the

Debtors pursuant to the terms set forth in that order, and (ii) except for the Carve-Out, no costs or

expenses of administration incurred in the Bankruptcy Cases would be charged against BOW,

any of its claims, or against its interest in collateral pursuant to sections 105 or 506(c) of the

Bankruptcy Code, or otherwise, without BOW's consent.  Complt. ¶57.  Nonetheless, in Count

Three, the Trustee contends that "[i]n calculating the amount of BOW's secured claim, the

Bankruptcy Court should surcharge the collateral securing such claim for the amount of the

Carve-Out in a manner consistent with the terms of the Final Cash Collateral Order." *Id.* ¶ 58.

---

[38]    In any event, the Sale Order Provides a procedure for the determination of whether BOW can assert a claim under § 506(b) against the Debtors.  As relevant, it states that if BOW "asserts that a sum greater than $5,308,526.09 is due, to satisfy its claim, [BOW] shall notify the Debtors in writing and provide an accounting of its claim."  Sale Order ¶ 15.  If the Debtors do not agree with such additional sums, " [BOW] may file an appropriate motion with the Court to determine the correct amount of its claim."  *Id.*; *see also* Final Cash Collateral Order ¶ (C)(ii) (provides Debtors with the ability "review and potentially challenge any interest fees, expenses or disbursements asserted by BOW" under section 506(b) of the Bankruptcy Code).

The Trustee explains that in this Count, he is not seeking a "non-consensual surcharge" of administrative expenses against BOW's collateral.  Opp'n 13.  Rather, he says that he is seeking to enforce the terms of the Carve-Out under the Final Cash Collateral Order.  *Id.*[39]  However, under that order, the Carve-Out is payable only after the occurrence of a Carve-Out Event, and in the event that the estates lack unencumbered funds to satisfy administrative expenses.  *See* Final Cash Collateral Order ¶ 3 d.  It is undisputed that neither condition exists.  As such, Count Three is dismissed as it fails to state a claim upon which relief can be granted.[40]

## Count Four

Count Four of the Complaint focuses on alleged defects in BOW's "fixture filing."  The Trustee asserts that to perfect its lien on equipment that has become a fixture to real property, BOW was required to make a "fixture filing" in the appropriate real property records where the real property is located.  Complt. ¶ 60.  He maintains that although BOW purported to make a "fixture filing" with respect to "certain equipment" owned by Cocoa Services, the "fixture filing" with respect to "certain equipment" was defective because (i) the filing did not correctly identify the record owner of the real property and gave the wrong address for that property; and (ii) BOW did not purport to make any filing with respect to "other" equipment owned by Cocoa Services that became fixtures.  *Id.* ¶ 61.  Accordingly, he contends that he can avoid "any such

---

[39]    The Trustee put a finer point on his contentions, as follows:

> For example, BOW agreed to a Carve-Out of its collateral to pay for certain administrative expenses of the case, such as the debtor's professional fees and expenses.  To the extent the Court determines that BOW has an allowable secured claim, the amount of the Carve-Out should be deducted from the allowed amount of BOW's secured claim, given that the collateral securing such claim was liquidated for BOW's benefit.

Opp'n 13.

[40]    BOW reads the Final Cash Collateral Order to deny the Trustee standing to assert claims belonging to the Debtors' estates.  *See* Reply 24 n.21.  He contends that because the Trustee failed to get the Court's permission to bring an action for surcharge (Count Three) or to avoid liens (Count Four), the Court must dismiss them.  *Id.*  The Court does not reach that issue in resolving the Motion.

unperfected or improperly perfected lien," for the benefit of Cocoa Services' estate, pursuant to section 544 of the Bankruptcy Code.  *Id.* ¶ 62.

At the hearing on the Motion, the Trustee's counsel explained that he included Count Four as "belt and suspenders" in order to be in a position to avoid BOW's lien on the fixtures, if the Trustee prevailed on his challenges to BOW's liens under Counts One and Two of the Complaint.[41]  In this light, having determined that Counts One and Two fail to state claims for relief and, as such, should be dismissed, the Court finds that Count Four likewise should be dismissed.

### Conclusion

For all of the foregoing reasons, the Motion is granted as set forth herein and the Complaint is hereby dismissed.  The parties are directed to submit a proposed consensual order, or absent consent, to settle a proposed order, consistent with this decision.

Dated: New York, New York
        April 13, 2018                               /s/ James L. Garrity, Jr.
                                                    Hon. James L. Garrity, Jr.
                                                    United States Bankruptcy Judge

---

[41]    Trustee's counsel explained, as follows:

> [Count] Four is just basically . . . if we win, then the lien should be avoided, so that doesn't really say anything more than that. You know, I'm not sure if it strictly was needed or not, but it's more like a belt and suspenders just to make sure.

Transcript of Hearing at p. 84:20-25.